IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**CARL HOLDER**     **PLAINTIFF**

v.     **No. 4:23CV133-JMV**

**DEPUTY WARDEN DAKOTA WHITE, ET AL.**     **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Carl Holder, a State prisoner who challenges the conditions of his confinement at the Mississippi State Penitentiary. He is proceeding under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1] The plaintiff alleges that the defendants violated his right to due process in finding him guilty of a prison rule violation.

On November 13, 2023, the court ordered [15] Holder to specify the punishments imposed as a result of the rule violation within 21 days so that the court may properly evaluate the merits of the allegations in the complaint. The order stated that failure provide this information by the deadline would result in dismissal of the case without prejudice under Fed. R. Civ. P. 41(b). Doc. 15. The plaintiff did not provide the copy by the deadline, and the court dismissed [16] the case without prejudice on December 14, 2023. That same day, the plaintiff filed a response [17] to the show cause

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

order, listing the four punishments imposed as a result of being found guilty of the rule violation. The court reinstated the case and gave the plaintiff an opportunity to show cause why the instant case should not be dismissed for failure to state a claim upon which relief could be granted.

The plaintiff responded [17], [20] to the Show Cause Order, and the matter is ripe for resolution. The court will discuss the plaintiff's arguments in the relevant sections below. The gravamen of the plaintiff's claims is that he unfairly received four punishments for one infraction (which, he argues, is a violation of the prohibition against double jeopardy) – and that he was found guilty of the infraction, though he alleges that he is innocent. For the reasons set forth below, the court finds that the plaintiff has not shown cause, and the instant case will be dismissed for failure to state a valid claim under 42 U.S.C. § 1983.

## Factual Allegations[2]

On October 6, 2022, the plaintiff was found guilty of assaulting another inmate with a broomstick. Doc. 14. The Rule Violation Report states that the plaintiff admitted the assault during an interview conducted by Warden Lee Simon. *Id.* According to the plaintiff, however, the event never occurred; he never admitted committing the assault, and no evidence was introduced against him at the disciplinary hearing. Doc. 1 at 6, 8, 9, 11. As a result of the guilty finding, the plaintiff received four punishments: (1) 60 days loss of all privileges; (2) a recommendation for review of his custody classification; (3) loss of earned time credits; and (4) the freezing of his inmate trust account. Docs. 14, 17. As discussed below, it appears that the plaintiff's allegations fail to state a valid claim under 42 U.S.C. § 1983.

## Double Jeopardy

---

[2] In the interest of completeness and clarity, the court has drawn the facts and procedural posture nearly verbatim from the January 12, 2024, Show Cause Order [18].

The plaintiff's arguments regarding double jeopardy are without substantive merit. Actions taken pursuant to prison disciplinary procedures do not place an inmate "in jeopardy" for purposes of subsequent criminal prosecution, *Keaveny v. United States*, 405 F. 2d 821 (5th Cir. 1969); *Ryans v. State of Louisiana*, 314 F. Supp. 1047 (D. La.), *aff'd* 433 F. 2d 996 (5th Cir. 1970), and consequently do not implicate the double jeopardy provision of the Fifth Amendment for purposes of additional or concurrent disciplinary actions. *See United States v. Galan*, 82 F.3d 639 (5th Cir. 1996), *United States v. Buck*, 786 F. App'x 469, 470 (5th Cir. 2019)(per curiam)(not reported). The plaintiff's double jeopardy arguments thus fail to state a valid claim under 42 U.S.C. § 1983.

### Loss of Privileges and Recommendation of Custody Classification Review: Due Process in the Prison Context

Under the ruling in *Sandin v. Conner*, 515 U.S. 472 (1995), as to the punishments of loss of privileges and review of custody classification, it appears that the plaintiff has not set forth a valid claim for violation of the Due Process Clause or any other constitutional protection. Though

> [s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause, . . . these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id.* 115 S. Ct. at 2300 (citations omitted).

In *Sandin*, the discipline administered the prisoner was confinement in isolation. *Id*. The court found that this discipline fell "within the expected parameters of the sentence imposed by a court of law," and "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. at 2300-01. Therefore, imposition of these punishments ran afoul of neither the Due Process Clause nor State law or regulations – and thus did not give rise to a liberty interest. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000) (holding prisoner's thirty-day

loss of commissary privileges and cell restriction due to disciplinary action failed to give rise to due process claim).

In the present case, the plaintiff's punishments at issue were 60 days loss of all privileges and a recommendation for review of his custody level. These punishments clearly fall "within the expected parameters of the sentence imposed by a court of law," *Sandin, supra,* at 2301, and "[do] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. As such, the plaintiff's allegations regarding violation of his right to due process as to these two punishments are without merit, and they will be dismissed with prejudice for failure to state a claim upon which relief could be granted.

### Loss of Earned Time: An Issue to Be Resolved Through *Habeas Corpus*, Not Through § 1983

The plaintiff similarly contends that the defendants violated his constitutional rights by stripping him of earned time credits – which count toward his early release from confinement. Section 1983 is not the appropriate vehicle for an inmate to seek recovery of lost earned time credits, *Preiser v. Rodriguez*, 411 U.S. 475, 93 S. Ct. 1827, 36 L. Ed. 2d 439 (1973), and it is likewise improper for an inmate to sue for damages under § 1983 where success on the merits of the inmate's claim would "necessarily imply" invalidity of his confinement. *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). In both instances, the inmate's available remedy is through a petition for a writ of *habeas corpus*. The Court has also applied *Heck* in cases involving inmates challenging the loss of earned time credits through prison disciplinary proceedings resulting in a change of their sentences. *Edwards v. Balisok*, 520 U.S. 641 (1997).

In the Fifth Circuit, the test regarding whether a prisoner must first obtain *habeas corpus* relief before bringing a § 1983 action is: "[I]f a favorable determination would not automatically entitle the prisoner to accelerated release, the proper vehicle for suit is § 1983. If it would so entitle him, he must

first get a *habeas* judgment." *Clarke v. Stalder*, 121 F.3d 222, 226 (5th Cir.), *reh'g denied*, 133 F.3d 940 (1997) (*citing Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995), *cert. denied*, 516 U.S. 1059, 116 S. Ct. 736, 133 L. Ed. 2d 686 (1996)). The plaintiff, if successful in his challenge to the loss of earned time credits, would be entitled to accelerated release. As such, he must obtain *habeas corpus* relief before bringing such a challenge under § 1983 – and this claim will be dismissed, but without prejudice to his ability to seek *habeas corpus* relief for the loss of his earned time credits.

## Frozen Inmate Account: Taking of Property Without Due Process of Law

The plaintiff's challenge to the punishment of freezing of his inmate account must also be dismissed for failure to state a valid claim under 42 U.S.C. § 1983.[3] The random and unauthorized deprivation of a prisoner's property by a state actor does not violate the prisoner's due process rights if the state provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). This rule, the Parratt/Hudson doctrine, provides that

> no constitutional claim may be asserted by a plaintiff who was deprived of his liberty or property by negligent or intentional conduct of public officials, unless the state procedures under which those officials acted are unconstitutional or state law fails to afford an adequate post-deprivation remedy for their conduct.

*Martin v. Dallas County, Tex.*, 822 F.2d 553, 555 (5th Cir. 1987); *see also Hudson*, 486 U.S. at 533, *Daniels*, 474 U.S. at 330-31; *see also White v. Epps*, 411 Fed.Appx. 731 (5th Cir. 2011). Thus, the

---

[3] It is not clear whether, in the Fifth Circuit, freezing an inmate's account rises to the level of the taking of his property, though the Ninth Circuit has held that, in some circumstances, "a state must provide a hearing prior to freezing a significant sum in [an] inmate's account …." *Shinault v. Hawks*, 782 F.3d 1053, 1058 (9th Cir. 2015) (regarding Oregon Department of Corrections freezing inmate account with a balance in excess of $60,000). The court will assume, for the purposes of this memorandum opinion only, that freezing an inmate's account constitutes a taking of his property.

initial question regarding the alleged taking of the plaintiff's property is whether Mississippi law affords him an adequate post-deprivation remedy for his loss.

In most circumstances, suits against the Mississippi government would be controlled by the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-9 ("MTCA"). As to suits filed by prisoners, the MTCA states:

> (1) A governmental entity and its employees acting and within the course and scope of their employment or duties shall not be liable for any claim:
>
> . . .
>
> (m) Of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

Miss. Code Ann. § 11-46-9(1)(m). At first blush, this statute would seem to foreclose any remedies the plaintiff may have under state law. However, the plaintiff's remedy for the taking of property arises directly from the Constitution of the State of Mississippi, which cannot be circumvented through a state statute. *Pickering v. Langston Law Firm, P.A.*, 88 So.3d 1269 (Miss. 2012).

The unlawful taking of an inmate's property can violate Article 3, Section 17 of the Constitution of the State of Mississippi. *Bishop v. Reagans*, 2012 WL 1804623 (S.D. Miss.), *citing Johnson v. King*, 85 So.3d 307 (Miss. App., 2012). Article 3, Section 17 of the Mississippi Constitution reads:

> Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use by the public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.

The circumstances in *Johnson* appear to be legally indistinguishable from those in the instant case. The prison officials in that case confiscated Johnson's property (a drinking mug) and disposed of it.

*Johnson v. King*, 85 So.3d 307, 311-312 (Miss. App. 2012). Johnson had purchased the mug from the canteen with his own money; the mug as purchased was not considered contraband, and Johnson had not modified the mug in such a way to turn it into contraband. *Id*. The Mississippi Court of Appeals held that, under these circumstances, the taking of Johnson's mug violated the Mississippi Constitution and that prison officials had to either replace the mug or compensate Johnson for its fair value. *Id*.

Those facts mirror the facts in the present case, where the plaintiff alleges that he has been deprived of property (funds in his inmate account) without due process of law. As such, the plaintiff has an adequate remedy under state law (a lawsuit based upon the Mississippi Constitution), and his claims for the taking of his property without due process will be dismissed with prejudice.

**Conclusion**

For the reasons set forth above:

(1) The plaintiff's allegations regarding loss of privileges, review of custody classification, and freezing his inmate account will be dismissed *with prejudice* for failure to state a valid § 1983 claim;

(2) Further, the plaintiff's allegations regarding loss of his earned time credits will be dismissed for failure to state a claim under § 1983 – but *without prejudice* to his ability to seek *habeas corpus* relief as to that claim; and

(3) This case is **CLOSED.**

**SO ORDERED**, this, the 1st day of October, 2024.

/s/ Jane M. Virden
UNITED STATES MAGISTRATE JUDGE